UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HA NGOC NGUYEN,

               Plaintiff,

     v.

CAROLYN W. COLVIN,

               Defendant.

Case No.  C-12-01158 JCS

**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Docket Nos. 24, 25

## I.    INTRODUCTION

Plaintiff, Ha Ngoc Nguyen, contends that he is disabled under the Social Security Act ("SSA"), 42 U.S.C. § 423(d)(1).  Mr. Nguyen was diagnosed with an aneurism in April of 2009 and has experienced double vision and severe headaches since then.  He seeks Disability Insurance Benefits and Supplemental Security Income Payments under Titles II and XVI of the SSA.  The Commissioner of the Social Security Administration ("Commissioner") denied his application for benefits.  Mr. Nguyen exhausted the administrative remedies available to him with respect to his disability claim.  He seeks review of the Commissioner's decision and asks the Court to find that he is disabled and remand for award of benefits or in the alternative, to reverse and remand for further proceedings.  For the reasons stated below, the Court GRANTS Plaintiff's Motion for Summary Judgment, DENIES Defendant's Motion for Summary Judgment, and remands for award of benefits. [1]

_____

[1] The parties have consented to the jurisdiction of the United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Procedural History

Mr. Nguyen filed for Disability Insurance Benefits on June 24, 2009 and for Supplemental Security Income Payments on June 25, 2009.  Administrative Record ("AR") at 29.  His applications were denied initially and upon reconsideration.  AR at 94, 102.

Administrative Law Judge ("ALJ") Regina L. Sleater reviewed the decision and found that Mr. Nguyen was not disabled.  AR at 36.  Mr. Nguyen requested administrative review and the Appeals Counsel denied his request on November 29, 2011, making the ALJ's decision the final decision of the Commissioner.  AR at 6.

Mr. Nguyen brought this action pursuant to 42 U.S.C. § 405(g), which gives the Court jurisdiction to review the final decision of the Commissioner.  He filed a motion for summary judgment asking the Court to reverse the Commissioner's decision.  The Commissioner responded with a cross-motion for summary judgment asking the Court to affirm the final decision of the Social Security Administration.

### B.     Mr. Nguyen's Background

Mr. Nguyen was born and raised in Vietnam.  AR at 378.  He was born on August 5, 1959 and has been living in the United States for approximately forty years.  AR at 382.  Although he speaks English, it is not his preferred language.  AR at 167, 382.  He has a high school diploma and at least two years of college.  AR at 173, 378.  Mr. Nguyen sold furniture for ten years before being laid off in November of 2007.  AR at 168, 379.  Prior to this, he was a gardener and a tailor.  AR at 379.

### C.     Mr. Nguyen's Medical History

#### 1.     *Diagnosis and Treatment of Mr. Nguyen's Aneurism*

On April 17, 2009, Mr. Nguyen went to the emergency room complaining of headaches and numbness in the left side of his face.  AR at 274.  He appeared to be in pain and received morphine and Phenergan.  AR at 275.  The headaches had been continuous for more than one week and he identified a pain level of eight out of ten.  AR at 279.  He also experienced double vision and dizziness while standing.  AR at 275.  Mr. Nguyen had "not had similar symptoms

2

previously" and he described the quality of the headaches as "unlike previous headaches."  AR 299.  His "fall risk" was intermediate and "fall interventions" were initiated.  AR at 274.

A CT scan and MR angiogram revealed that Mr. Nguyen had an aneurysm.  AR at 303, 312, 323.  At 12:50 p.m. on April 18, 2009, he was taken via ambulance to Good Samaritan Hospital ICU.  AR at 277, 320.  Once there, Mr. Nguyen continued to complain of a headache that was eight out of ten.  AR at 320.  Dr. John Ho, M.D., performed another angiogram, which demonstrated that Mr. Nguyen had "a large saccular aneurysm in the cavernous portion of the left ICA."  AR at 326.

Mr. Nguyen underwent a procedure called coil embolization with stent assist ("the procedure") to treat his aneurysm, which seemed to be a success.[2]  AR at 316-17, 328-30.  While recovering in the ICU, Mr. Nguyen suffered from agitation, confusion, and hallucinations.  AR at 316, 342.  As a result, he was sedated and placed on antipsychotic medication.  AR at 316, 342.  However, he was "doing better" by April 22, 2009 and subsequently recovered from the procedure.  AR at 316, 340.  Nonetheless, the aneurism damaged Mr. Nguyen's sixth nerve.  AR at 383.  Mr. Nguyen was diagnosed with sixth nerve palsy, which causes him to experience double vision.  AR at 316.  To correct the double vision, he wears an eye patch.  AR at 70, 382.

### 2.      *Follow-up Consultation with Dr. Padidar*

On May 6, 2009, Mr. Nguyen saw Dr. Arash M. Padidar, M.D., for a follow-up consultation.  AR at 373.  Dr. Padidar noted that Mr. Nguyen "is still complaining of left sided headaches and left eye double vision/blurriness" and "takes Advil-migraine with relief of symptoms."  *Id.*  He also noted that Mr. Nguyen had an aneurysm and was taking Plavix.  *Id.*  In the mental status portion of his evaluation, Dr. Padidar noted that Mr. Nguyen's "[a]ttention span and concentration is good."  *Id.*  Dr. Padidar recommended "a 3 month follow-up angiogram."  AR at 374.  He noted that Mr. Nguyen will be seen for follow-ups on an as-needed basis and recommended that he "continue taking Plavix."  *Id.*  Dr. Padidar referred Mr. Nguyen to Valley

---

[2] Dr. John Ho, M.D., described the procedure as "[s]uccessful coil embolization of internal carotid artery, cavernous portion aneurysm with stent assistance."  AR at 329-30.  The procedure involved inserting a catheter into the "left internal carotid artery" and placing platinum coils in the aneurysm.  AR at 328-29.

United States District Court
Northern District of California

Medical Hospital because Mr. Nguyen had no health insurance. *Id.* He also referred Mr. Nguyen to an ophthalmologist for his double vision and instructed him to continue wearing the eye patch. *Id.*

A Physician Assistant in Dr. Padidar's office wrote that Mr. Nguyen was "unable to resume his activities of daily living" as of May 7, 2009. AR at 377. Additionally, Dr. Padidar certified that Mr. Nguyen had not been able to work since April 18, 2009 and was not expected to be able to work again until September 15, 2009. AR at 376.

### 3.   *Mr. Nguyen's Disability Report*

In his disability report, Mr. Nguyen stated that the "illnesses, injuries, or conditions" ("condition") that limited his ability to work were "[i]ntercranial aneurysm" and "left eye blind." AR at 167. He stated that he became unable to work on April 17, 2009, but had not worked since he was laid off on November 25, 2007. AR at 168. In response to the question, "[h]ow do your illnesses, injuries, or conditions limit your ability to work?" Mr. Nguyen wrote, "can't drive, unbalance when standing, can't focus, can't see, headaches." AR at 167. In response to a question asking if he could speak and understand English, Mr. Nguyen answered no and stated that his preferred language was Vietnamese. *Id.* However, he also stated that he can read and understand English and can write more than his name in English. *Id.*

Mr. Nguyen reported that he was last employed as a furniture salesman, but could not recall how long he held this position. AR at 168. He stated that this was his only job during the previous fifteen years. *Id.* According to Mr. Nguyen, the job entailed greeting customers and selling furniture, but he also carried and lifted furniture. AR at 168-69. He stated that he frequently lifted twenty-five to fifty pounds and the heaviest weight he lifted was fifty pounds. AR at 169. Mr. Nguyen also stated that each day he worked as a salesman, he walked and stood for eight hours, reached for one hour, and wrote, typed, or handled small objects for one hour. *Id.*

With regard to medications, Mr. Nguyen stated that he was taking the pain killer Advil, a blood thinner called "clopivas," and "acuvite," which he described as a "vitamin for eye." AR at 172. He reported that he experienced dizziness as a side effect of the Clopivas. *Id.*

United States District Court
Northern District of California

#### 4.  *Mr. Nguyen's Self-Reported Function Report*

On July 3, 2009, Mr. Nguyen filled out a third party function report with information about himself.  AR at 175.  He stated that before the onset of his condition, he used to be able to do "everything."  AR at 184.  Mr. Nguyen reported that he permanently covers his left eye, feels unbalanced, sometimes forgets things, and experiences constant headaches and dizziness.  AR at 180.  Mr. Nguyen reported that he can walk about five hundred yards before needing to rest for about half an hour and can pay attention for a couple hours.  AR at 188.  He also stated that he takes Advil every five hours for his headaches and that this affects his ability to sleep.  AR at 184.

With regard to his daily activities, Mr. Nguyen stated that he reads and watches television every day and walks around the block a couple times a week.  AR at 186-87.  However, he reported that he spends less time reading than he used to because of his condition.  AR at 187.  Mr. Nguyen also stated that he does not prepare meals because he does not know how to cook and experiences headaches and dizziness.  AR at 185.  He stated further that he does not drive because of his condition and his friend takes him to the store every two weeks to buy water and snacks. AR at 186.

#### 5.  *Psychological Evaluation by Dr. Morse*

On August 11, 2009, Dr. Roxanne Morse, Ph.D., conducted a psychological assessment of Mr. Nguyen.  AR at 378.  Mr. Nguyen was referred to Dr. Morse by the California Department of Social Services.  *Id.*  Initially, Mr. Nguyen was scheduled to have an interpreter present during the evaluation.  *Id.*  But according to Dr. Morse, Mr. Nguyen decided that he could be tested alone after he talked with the interpreter.  *Id.*  Dr. Morse noted that Mr. Nguyen wore an eye patch during the evaluation.  AR at 379.

Dr. Morse based her evaluation on the data obtained from tests she conducted, reviewing the available record, a mental status examination, and a clinical interview.  AR at 380.  Although Dr. Morse did not evaluate Mr. Nguyen from a medical standpoint, she noted that "[a]n additional obstacle to adequate work performance may be the claimant's reported medical condition."  AR at 381.  Dr. Morse stated further that "[t]his matter is beyond the scope of this evaluation and deferred to medical opinion."  *Id.*  She also stated that her "report represents a one-time

examination" and "should be considered in conjunction with any additional documentation that may become available." *Id.*

Dr. Morse opined that Mr. Nguyen experienced mild sadness and struggled with feelings of frustration and disappointment. *Id.* Dr. Morse found that Mr. Nguyen could understand, remember, and carry out complex instructions. AR at 381. She also found that Mr. Nguyen's ability to interact with the public, supervisors, and coworkers appeared to be adequate and he exhibited good judgment and insight. AR at 380-381. Dr. Morse found that Mr. Nguyen's "pattern of performance on the C-TONI would suggest overall intellectual function within the Average range." AR at 380. She reported that Mr. Nguyen "displayed pace and persistence for the duration of the examination." AR at 381. Dr. Morse also noted that Mr. Nguyen's pattern of performance on the "Trail-Making Test" suggested that he "has mild difficulties in the areas of mental tracking, sustained attention, and executive function." AR at 380. Under the "Diagnostic Impressions" section of her evaluation, Dr. Morse wrote "Adjustment Disorder With Depressed Features" for "Axis I," "Diagnosis Deferred" for "Axis II," and "Defer to Medical Records" for "Axis III." *Id.*

### 6. *Examination by Dr. Gable*

Consultative internist Dr. Clark E. Gable, M.D., examined Mr. Nguyen on August 11, 2009. AR at 32, 382. Mr. Nguyen primary complaint was headaches and double vision. AR at 382. Dr. Gable noted that his condition remained unchanged since the double vision and headaches began in April 2009, around the time an MR angiogram revealed his large saccular aneurysm. AR at 326, 382. Dr. Gable observed that Mr. Nguyen wore an eye patch, which alleviated his double vision. *Id.* However, his headaches remained. *Id.* Mr. Nguyen described the sensation as pressure from eye level to the top of his head and said that lying down relieved these symptoms. *Id.* He also described a peculiar sensation in his face. *Id.* This concerned Dr. Gable because it suggested that Mr. Nguyen might have some paralysis on the right side of his face. *Id.*

Dr. Gable opined that "except for VIth nerve palsy which apparently is caused by an aneurism," Mr. Nguyen's examination was normal. AR at 383. He concluded that Mr. Nguyen

would be able to (1) sit for six hours a day with usual breaks, (2) stand and walk for up to six hours a day, and (3) lift twenty pounds frequently and forty pounds occasionally. *Id.* However, he qualified his findings as follows: "Nevertheless, he continues to have the diplopia as noted. He is concerned about the persistence of an aneurysm in which case I would recommend that his activities be curtailed as far as lifting, undue physical activity until these questions have been resolved." *Id.*

### 7.     *Evaluation by Dr. Bugg*

On September 29, 2009, medical consultant Dr. G. Bugg, M.D., completed a Residual Functional Capacity ("RFC") Assessment based on a review of Mr. Nguyen's medical records. AR at 386-93. Dr. Bugg found that Mr. Nguyen could (1) lift twenty pounds occasionally and forty pounds frequently, (2) stand, walk, and/or sit about six hours in an eight-hour work day with usual breaks, and (3) occasionally climb "ramps/stairs" and "ladders/rope/scaffolds." AR at 387-88. He also found that Mr. Nguyen had visual limitations relating to near acuity and depth perception. AR at 388. Dr. Bugg acknowledged that his findings differed significantly from the conclusions made by some of Mr. Nguyen's treating or examining physicians. AR at 390. He indicated that finding that Mr. Nguyen had "no difficulty walking provided he uses a patch" contradicted other medical opinions. AR at 390, 392. But he supported this conclusion by citing Dr. Gable's opinion, which stated that Mr. Nguyen could "stand/walk" up to six hours. AR at 392.

Dr. Bugg noted that Mr. Nguyen complained of headaches, but did not elaborate on this point other than to say that Mr. Nguyen had not received substantial treatment for his headaches. AR at 393. Dr. Bugg noted that Mr. Nguyen's vision limitations were severe, but he expected that Mr. Nguyen would be able to return to "light" work by April 2010. AR at 393.

### 8.     *Emergency Room Visit and Examination by Dr. Wang*

Mr. Nguyen went to the emergency room again on July 5, 2010 because he was experiencing severe headaches behind his left eye and eye pain. AR at 410. Treating physician Dr. Clifford Wang, M.D., noted that these symptoms had been chronic since the procedure in April 2009. *Id.* Dr. Wang prescribed Mr. Nguyen a generic form of Vicodin. AR at 408. He

1  directed Mr. Nguyen to "take 1 tablet every 6 hours as needed for pain" and stated that "this

2  medication is used to treat moderate to severe pain."  *Id.*  Dr. Wang confirmed that Mr. Nguyen

3  has double vision.  AR at 410.

4       Dr. Wang also found post-embolization coils in the left middle cerebral artery fossa.  *Id.*  A

5  lumbar puncture was negative and a CT scan of Mr. Nguyen's head showed no acute intracranial

6  findings.  *Id.*  An MRI/MRA did not reveal any residual aneurisms.  *Id.*  However, Dr. Wang also

7  noted that the artifact from the prior left cavernous aneurism coiling limited evaluation in this

8  region.  *Id.*

9       **9.**      ***Initial Examination and Subsequent Appointments with Dr. Lin***

10       On August 18, 2010, Dr. Peter Lin, M.D., examined Mr. Nguyen and observed that he

11  suffered from daily headaches, vision problems, and depression.  AR at 417-20.  At the time of the

12  appointment, Mr. Nguyen was taking Vicodin and his pain level was between eight and nine out

13  of ten.  AR at 422.  Dr. Lin completed a RFC questionnaire and concluded that Mr. Nguyen's

14  ability to work was limited in the following ways: (1) Mr. Nguyen's symptoms constantly

15  interfere with his concentration and attention; (2) he is capable of performing only low stress

16  work; (3) he cannot sit for more than four hours or stand for more than 10 minutes without

17  needing to sit, walk, or lie down; (4) he can stand or walk for less than two hours and sit for about

18  four hours in an eight-hour workday; (5) he can lift ten pounds frequently, twenty pounds

19  occasionally, but can never lift fifty pounds; (6) he can rarely twist, bend, or crouch and cannot

20  climb ladders or stairs; (7) his ability to do repetitive reaching, handling, or fingering is

21  moderately limited; and (8) Mr. Nguyen would also need to take five unscheduled breaks per five-

22  hour period.  AR at 417-20.  Dr. Lin concluded that these limitations would be likely to cause

23  "good" and "bad" days and therefore Mr. Nguyen was likely to miss more than four days of work

24  per month.  AR at 420.  Dr. Lin also found that these impairments lasted, or were expected to last

25  more than twelve months and were reasonably consistent with Mr. Nguyen's symptoms and

26  functional limitations.  AR at 418.  At the August 18, 2010 visit, Dr. Lin gave Plaintiff a

27  prescription for Neurontin.  AR at 417.

28       Mr. Nguyen subsequently saw Dr. Lin for several follow-up appointments.  AR at 441-

United States District Court
Northern District of California

447.  On September 29, 2010, Dr. Lin again noted that Mr. Nguyen has migraine headaches.  AR at 443. On December 22, 2010, Mr. Nguyen described his pain level as nine out of ten.  AR at 441.  When he returned to see Dr. Lin on March 22, 2011, he still suffered daily headaches and described his pain level as ten out of ten.  AR at 437.

At the request of Dr. Lin, Mr. Nguyen underwent a brain MRI on December 13, 2010.  AR at 433.  Dr. William Albert Deruso, M.D., concluded that no acute intracranial findings were discovered.  *Id.*  He also noted "[a]rtifact in the left cavernous ICA, secondary to prior coiling. Residual aneurysm would be better defined on CTA."  *Id.*

### 10.   *Administrative Hearing*

#### i.   *Mr. Nguyen's testimony*

Mr. Nguyen appeared before the ALJ for an administrative hearing on August 4, 2010. AR at 50.  He testified that although he rarely sees a doctor because he has no money or health insurance, he takes advantage of free care when it is available.  AR at 58.  According to Mr. Nguyen, four weeks before the hearing, his headaches were unusually severe; he was falling down because his head was spinning.  AR at 56-57.  As a result, he went to the emergency room.  AR at 58.  Mr. Nguyen testified that after he visited the hospital, he was given Vicodin.  AR at 58. According to Mr. Nguyen, he takes about 3 to 4 Vicodin a day for his headaches, but also uses Advil and Chinese medicine.  AR at 58, 72.  He testified that living in pain and not being able to work was like living a half-life.  AR at 59-60.

The ALJ asked Mr. Nguyen about his eye patch.  AR at 70.  Mr. Nguyen replied that he has been wearing it for more than a year.  *Id.*  According to Mr. Nguyen, he gets dizzy, falls, and bumps his head if he does not wear it.  *Id.*  He also testified that his headaches get worse if he tries to focus on something like watching television or reading a book.  *Id.*  Mr. Nguyen testified further that the right half of his body occasionally goes numb and he cannot lift his hand or legs. AR at 73-74.  Mr. Nguyen said this happens about once or twice a week and began after the procedure.  *Id.*  But he clarified that these symptoms go away after a couple minutes.  *Id.*

Mr. Nguyen testified that before July 2010, he walked two or three miles around the park next to his house on a regular basis, but needed to take breaks every ten minutes.  AR at 76.  He

United States District Court
Northern District of California

also said that standing or walking for more than ten minutes exacerbates his headaches and dizziness, which can cause him to fall. AR at 76-77. According to Mr. Nguyen, his legs and knees are fine and before July 2010, he could slowly walk up stairs and bend over to pick things up. AR at 73. He said that he could not lift heavy items, but could manage to lift a couple books. AR at 74. Mr. Nguyen also testified that he has periodically suffered memory lapses since the procedure. AR at 78. He stated further that beginning July 2010, he experienced appetite loss and mainly eats chicken soup. AR at 75.

ii.      *Medical expert's testimony*

During the hearing, the ALJ called medical expert Dr. Philip Gelber to testify. AR at 61. Dr. Gelber testified that he is a graduate of the St. Louis School of Medicine, a fellow with the American College of Surgeons, and is board certified. AR at 61. The ALJ asked Dr. Gelber to testify at the hearing and sent him a copy of Mr. Nguyen's medical records. AR at 54-56, 61-62, 143. His testimony was based on his review of the medical records. AR at 61-62.

Dr. Gelber testified that Mr. Nguyen has double vision caused by sixth nerve palsy and a history of severe headaches, for which he receives pain medication. AR at 64. He observed that although Mr. Nguyen underwent limited testing, his doctors have not precisely identified the cause of his headaches. *Id.* Dr. Gelber testified that the CAT scan on July 5, 2010 did not reveal any acute inner cranial findings. *Id.* He also stated that Mr. Nguyen has post embolization coils in the area of his brain where the aneurism was, but there does not seem to be any leaking or other activity. AR at 64. Dr. Gelber testified that aside from the double vision and some loss in his field of vision, Mr. Nguyen's eyesight is normal. AR at 63-65, 67.

Dr. Gelber then discussed how these symptoms and medical conditions affect Mr. Nguyen's ability to work. AR at 66. According to Dr. Gelber, wearing the eye patch eliminates Mr. Nguyen's double vision, but this means that he cannot do work that requires binocular vision. AR at 66, 69. Consequently, Dr. Gelber opined that Mr. Nguyen should not work around heights, heavy machinery, or areas where there might be noxious gasses or heavy wind, dust, and dirt blowing around. AR at 66. With regard to the headaches, Dr. Gelber testified that sixth nerve palsy normally would not cause headaches once the bad eye is covered. AR at 68. He did not see

United States District Court
Northern District of California

1   anything in the record that would allow him to diagnose the cause of the headaches.  AR at 69.

2                              iii.        *Vocational expert's testimony*

3          The ALJ also called a vocational expert ("VE"), Darlene McQuary, to testify.  AR at 81.

4   The VE testified that Mr. Nguyen was last employed as a furniture salesman in 2006 and 2007,

5   earning $7,500 in 2006 and $8,000 in 2007.  *Id.*  The VE stated that, because of Mr. Nguyen's

6   earnings during this period, he was not engaged in substantially gainful activity.  *Id.*

7          The ALJ asked the VE hypothetical questions to determine what kind of work Mr. Nguyen

8   would be able to do with various limitations that might be found to result from his physical

9   limitations.  AR at 82.  The hypothetical person in these questions was designed to represent

10  someone with Mr. Nguyen's abilities, education, and vocational background.  *Id.*  The

11  hypothetical person described by the ALJ was the same age as Mr. Nguyen and had the following

12  limitations:

13              ". . . can occasionally lift 50 pounds, frequently lift 20 pounds; can
                stand, walk and sit for 6 out of 8 hours; and who suffers from the
14              impairment, which is the equivalent of no vision in his left eye.  This
                would mean he can't do fine, close work.  That since he would have
15              no field of vision to the left he shouldn't be in a situation where
                items are coming at him from the left because he wouldn't be able to
16              see them.  And he should never be around wind, noxious gasses,
                fumes, heights, unprotected areas, open machinery."
17

18  *Id.*  The VE testified that a person with these limitations would be able to find work as a "scale

19  operator" or "Mexican food maker by hand."  AR at 83.  She testified that there would be Mexican

20  food jobs in this area, but she was unsure about scale operator.  *Id.*  A "Mexican food maker by

21  hand" is essentially a person who makes enchiladas.  *Id.*  There were "probably 3,000 to 4,000" of

22  these jobs in the region.  *Id.*  This job requires light exertion and a skill level of two.  *Id.*  When the

23  ALJ asked if Mr. Nguyen could take tickets as a parking lot attendant, the VE said that he could

24  not because a parking lot attendant might have cars coming from the left side.  AR at 84.  Mexican

25  food maker by hand was the only regional job the VE knew of that Mr. Nguyen could do.  *Id.*

26         Mr. Nguyen's attorney also asked the VE a hypothetical question regarding physical

27  limitations.  AR at 87.  In it, the hypothetical person had the same limitations posed by the ALJ,

28  but this person also could not stand for more than four hours in an eight-hour workday.  *Id.*  The

United States District Court
Northern District of California

VE answered that someone with this additional limitation would not be able to perform any work, including Mexican food maker.  *Id.*

### D.   The Five-Step Analysis and the ALJ's Findings

#### 1.   *The Five-Step Analysis*

A claimant is eligible for disability benefits under the SSA if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1).  But the claimant is only disabled if his physical or mental impairments are of such severity that he cannot do his previous work and "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A). The Commissioner established a sequential five-step evaluation process to determine whether a claimant meets this definition.  20 C.F.R. § 404.1520(a).  If the Commissioner concludes that the claimant is or is not disabled at one of the steps, the Commissioner does not proceed to the next step.  *Id.* § 404.1520(a)(4).  Otherwise, the evaluation proceeds to the next step.  The claimant bears the burden of proving Steps One through Four.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  At Step Five, the burden shifts to the Commissioner to prove that the claimant can perform other work.  *See Distasio v. Shalala*, 47 F.3d 348, 349 (9th Cir. 1995).

At Step One, the Commissioner considers the claimant's work history.  20 C.F.R. § 404.1520(a)(I).  If the claimant is doing "substantially gainful activity," the claimant is not disabled.  *Id.*  If not, then the evaluation proceeds to Step Two.  *Id.*

At Step Two, the Commissioner considers whether the claimant has a "severe medically determinable physical or mental impairment" or combination of such impairments that has lasted or is expected to last more than 12 months.  *Id.* § 404.1520(a)(ii).  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *Id.* § 404.1520(c).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).  "A claim may be denied at step two only if the evidence shows that the

individual's impairments, when considered in combination, are not medically severe, i.e., do not have more than a minimal effect on the person's physical or mental ability(ies) to perform basic work activities."  Social Security Ruling ("SSR") 85-28.  If medical evidence does not clearly establish such a finding, the evaluation proceeds to the next step.  *Id.*

At Step Three, the Commissioner compares the claimant's impairment(s) with a list of impairments that the Commissioner has determined are disabling ("Appendix 1").  20 C.F.R. § 404.1520(a)(iii).  If the impairment(s) "meets or equals" in severity an item on the list and meets the duration requirement, the claimant is disabled.  *Id.*  Otherwise, the Commissioner proceeds to Step Four.  *Id.*

At Step Four, the Commissioner considers the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4)(iv).  A claimant's RFC is the most the claimant can do in light of the physical and/or mental limitations caused by the impairment(s).  *Id.* § 404.1545.  If the claimant can perform his past relevant work, he is not disabled.  *Id.*  Past relevant work is work that the claimant has done in the fifteen months prior to the evaluation and was substantial gainful activity that lasted long enough for the claimant to learn to do it.  *Id.* § 404.1560(b)(I).  If the claimant cannot perform his past relevant work, the evaluation proceeds to Step Five.  *Id.* § 404.1545.

At Step Five, the Commissioner considers whether the claimant, in light of the RFC, age, education, and work experience, can make an adjustment to "other work" in the national economy.  *Id.* § 404.1520(a)(v).  If the claimant can make an adjustment to other work, he is not disabled.  *Id.*  If he cannot, he is disabled and eligible for disability benefits.  *Id.*

### 2.   *The ALJ's Findings*

At Step One, the ALJ found that Mr. Nguyen has not engaged in substantial gainful activity since April 17, 2009, the onset date of his alleged disability.  AR at 31.

At Step Two, the ALJ found that Mr. Nguyen's diplopia (double vision) was a severe impairment that limited his ability to perform basic work.  *Id.*  She concluded that this impairment was medically determinable because it was caused by Mr. Nguyen's sixth nerve palsy.  *Id.*

The ALJ also found that Mr. Nguyen's chronic headaches were not a severe impairment.

*Id.*  She identified several reasons for this.  *Id.*  First, the ALJ cites Dr. Padidar's statement that Mr. Nguyen "took 'advil for migraine with relief of symptoms.'"[3]  *Id.*  Second, the ALJ states that Dr. Gable did not include "headache" as "a clinical diagnosis."  *Id.*  Third, the ALJ noted that "no acute pathology was shown on head CT's or brain MRI's."  *Id.*  Fourth, the ALJ stated that Mr. Nguyen "was only started on neurontin on a one-time neurological visit, August 18, 2010 without subsequent updating of progress."  *Id.*  Fifth, the ALJ stated that the medical expert during the hearing did not consider Mr. Nguyen's "reported headaches qualify as a 'severe' impairment, as defined by the Social Security Act."  *Id.*  For these reasons, the ALJ concluded that Mr. Nguyen's "reported headaches, as well as 'depression' or adjustment disorder, without psychiatric or psychological treatment, will be considered only 'non-severe.'"  *Id.*

At Step Three, the ALJ found that Mr. Nguyen did not have an impairment or combination of impairments that meets or equals one of the listed requirements in Appendix 1.  AR at 33.  The ALJ was persuaded by the medical expert's testimony and the lack of "marked neurological signs or other durational findings of body dysfunction."  *Id.*

At Step Four, the ALJ found that Mr. Nguyen had the following RFC:

> The claimant would be able to lift and carry 50 lbs. occasionally and 20 lbs. frequently; sit 6 to 8 hours; stand and walk for 6 hours in an 8-hour workday, with usual breaks.  However, the claimant cannot perform tasks requiring binocular vision, he can perform no "fine" work or tasks tolerating items coming towards him from the left side; he should not be exposed to fumes or winds, or work near hazards such as at unprotected heights or close to dangerous, moving machinery.

*Id.*  The ALJ stated that she based this determination on all of the "medical opinions in the record – none of which at any time, restricted him to less than at least some range of 'light' work for 12 continuous months."  *Id.*

In assessing the medical evidence, the ALJ accorded the most weight to Dr. Gable's opinion because it appeared to be the most consistent with the objectively documented medical

---

[3] The ALJ misquoted Dr. Padidar's statement about Advil.  AR at 31, 373.  Dr. Padidar noted that Mr. Nguyen took "Advil-migraine," while the ALJ stated that Mr. Nguyen took "advil for migraine."  AR at 31, 373.  Advil-migraine is a product specially formulated for migraine headaches.

United States District Court
Northern District of California

evidence.  AR at 34.  The ALJ based the RFC on Dr. Gable's findings, but also incorporated additional limitations to eliminate work that requires binocular vision.[4]  *Id.*

In determining Mr. Nguyen's RFC, the ALJ rejected Dr. Lin's RFC evaluation.  *Id.*  She gave three reasons for this.  *Id.*  First, the ALJ explained that Dr. Lin found that Mr. Nguyen could (1) stand for ten minutes, (2) stand and walk for less than two hours, (3) sit for less than four hours per workday, (4) work if he had five additional unscheduled breaks each day, (5) rarely bend, twist, or scoop, and (6) use his hands with moderate limitations.  *Id.*  The ALJ rejected these limitations because none of them "logically follows from the stated clinical findings of 'daily headaches' and 'left eye limitations.'"  *Id.*

Second, the ALJ cited the lack of documentation of Mr. Nguyen's follow-up appointments with Dr. Lin.  *Id.*  She stated that documentation of follow up appointments would have helped "determine whether this newly prescribed medication helped relieve the claimant's reported headache pain, the way that for example, he had reported over-the-counter advil had done for him on May 6, 2009."  *Id.*

Third, the ALJ rejected Dr. Lin's assessment that Mr. Nguyen's "pain and other symptoms would 'constantly' be sufficiently severe as to interfere" with his attention and concentration.  *Id.*  The ALJ cited Dr. Morse's evaluation, which noted that Mr. Nguyen's concentration was "intact" on August 11, 2009.  *Id.*  The ALJ also stated that Mr. Nguyen's "attention span and concentration were seen as 'good'" on August 11, 2009.  *Id.*  The ALJ concluded that, "even if accepted as accurate limitations on that date, the August 18, 2010 RFC form submitted by Dr. Lin should be rejected because it is non-durational, that is, inconsistent with medical evidence as a whole."  *Id.*

The ALJ concluded that Mr. Nguyen's double vision could reasonably be expected to cause his alleged symptoms.  AR at 35.  However, the ALJ found that Mr. Nguyen's statements concerning the intensity, persistence, and limiting effect of the symptoms were not credible to the extent that they were inconsistent with the ALJ's RFC assessment.  *Id.*

With regard to the headaches, the ALJ emphasized that within weeks of his brain surgery,

---

[4] However, Dr. Gable opined that Mr. Nguyen could lift only forty pounds occasionally, while the ALJ concluded that Mr. Nguyen could lift fifty pounds occasionally.  AR at 33, 383.

1    Mr. Nguyen relieved his symptoms by taking Advil and his attention span and concentration were

2    considered good. *Id.* The ALJ also noted that wearing an eye patch helps with his headaches and

3    dizziness. *Id.* She went on to note that Mr. Nguyen was laid off but continued in vain to look for

4    work. *Id.* The ALJ also stated that his subjective complaints and day-to-day limitations lacked

5    corroboration because he filled out his own Third Party Function Report. *Id.*

6           At Step Five, the ALJ found that Mr. Nguyen had no past relevant work. AR at 35. She

7    went on to conclude that he could work as a scale operator, Mexican food maker by hand, or

8    basket-filler, and that such jobs exist in significant numbers in the nationally economy. AR at 36.

9    As a result, she found that Mr. Nguyen was not disabled. *Id.*

10          **E.      Alleged Error by the ALJ**

11          Mr. Nguyen asserts that the ALJ erred because the hypothetical she posed to the vocational

12   expert did not reflect any limitations stemming from headaches. He argues that it was improper

13   for the ALJ to ignore the limitations in Dr. Lin's evaluation because Dr. Lin based these

14   limitations on clinical findings. Mr. Nguyen also argues that the ALJ did not articulate clear and

15   convincing reasons for rejecting his pain and limitations testimony because (1) she relied on one

16   line in the record indicating that Advil relieved his headaches while ignoring the evidence

17   suggesting that he continued to experience symptoms; (2) the fact that no acute pathology was

18   shown using CT and MRI technology failed to prove that he did not suffer headaches; and (3) the

19   fact that he looked for work and filed for unemployment before he became disabled is irrelevant

20   when determining his credibility.

21   **III.   ANALYSIS**

22          **A.      Legal Standard**

23          When reviewing the Commissioner's decision, the Court takes as conclusive any findings

24   of the Commissioner which are free from legal errors and "supported by substantial evidence." 42

25   U.S.C. § 405(g). Substantial evidence is relevant evidence that a reasonable mind might accept as

26   adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

27   *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence means "more

28   than a mere scintilla," but "less than a preponderance." *Desrosiers v. Sec'y of Health and Human*

United States District Court
Northern District of California

16

1    *Serv.*, 846 F.2d 573, 576 (9th Cir. 1988) (citations omitted).  Even if the Commissioner's findings

2    are supported by substantial evidence, they should be set aside if proper legal standards were not

3    applied when using the evidence to reach a decision.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th

4    Cir. 1978).  In reviewing the record, the Court must consider both the evidence that supports and

5    detracts from the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir.

6    1996); *see also Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  "The ALJ is responsible for

7    determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."

8    *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d

9    747, 750 (9th Cir. 1989)).  The Court "must uphold the ALJ's decision where the evidence is

10   susceptible to more than one rational interpretation."  *Id.* at 1039-40.  However, a reviewing court

11   must consider the entire record as a whole and may not affirm simply by isolating a "specific

12   quantum of supporting evidence."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

13   (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir.1989)).

14            **B.       New Evidence Submitted to the Appeals Council**

15            In reviewing the Commissioner's decision for substantial evidence, the Court must

16   consider the record as a whole.  *Id.*  This includes new evidence submitted to the Appeals Council

17   after the ALJ issued a decision.  *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163

18   (9th Cir. 2012) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)).  Whether new

19   evidence becomes part of the record that the district court must review is a question that has split

20   the circuits.  *Id.* (quoting *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)); *see also*

21   *Higginbotham v. Barnhart*, 405 F.3d 332, 335–36 (5th Cir. 2005) (discussing the circuit split).

22   However, the Ninth Circuit recently held that new evidence of this sort becomes part of the record

23   and must be considered by this Court when reviewing the Commissioner's decision.  *Id.* ("[W]e

24   hold that when the Appeals Council considers new evidence in deciding whether to review a

25   decision of the ALJ, that evidence becomes part of the administrative record, which the district

26   court must consider when reviewing the Commissioner's final decision for substantial evidence.").

27            In the present case, Mr. Nguyen submitted new and material evidence to the Appeals

28   Council after the ALJ reached her decision.  AR at 6-9, 421, 428.  The record reflects that

17

United States District Court
Northern District of California

1    although the ALJ had access to Dr. Lin's initial evaluation, she did not have the medical records

2    from Mr. Nguyen's follow up appointments with Dr. Lin.  AR at 421, 428.  The Appeals Council,

3    on the other hand, did review this evidence and considered it when deciding to deny review of the

4    ALJ's decision.  AR at 6-9.  Therefore, the Court must consider this evidence when reviewing the

5    Commissioner's decision.  *See Brewes*, 682 F.3d at 1163.

6        **C.**     **The ALJ's Step Four Determination**

7            **A.**     *Rejection of Dr. Lin's Opinion*

8            In determining Mr. Nguyen's RFC at Step Four, the ALJ expressly rejected Dr. Lin's

9    medical opinion.  AR at 34.  A treating physician's medical opinion is normally given substantial

10   deference.  *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ must give great

11   weight to the opinion of a treating physician "because 'he is employed to cure and has a greater

12   opportunity to know and observe the patient as an individual.'"  *Magallanes v. Bowen,* 881 F.2d

13   at 751 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987)).  Consequently, when

14   weighing medical opinions, the greatest weight is normally given to a treating physician.  *Batson

15   v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The opinion of an examining

16   physician, in turn, is entitled to greater weight than the opinion of a non-examining physician.

17   *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  The ALJ may only reject the uncontroverted

18   opinion of a claimant's treating physician by presenting clear and convincing reasons for doing so.

19   See *Magallanes*, 881 F.2d at 751.   For example, the uncontroverted opinion of a treating

20   physician may be rejected where it is "'brief and conclusionary in form with little in the way of

21   clinical findings to support [its] conclusion.'" *Id*. (quoting *Young v. Heckler*, 803 F.2d 963, 968

22   (9th Cir.1986)).

23           Where a treating physician's opinion is contradicted by the opinion of an examining

24   physician, the burden is somewhat less:  the "ALJ may reject the opinion of a treating physician in

25   favor of a conflicting opinion of an examining physician if the ALJ makes 'findings setting forth

26   specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"

27   *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes*, 881 F.2d at 751).

28   Similarly, the opinion of an examining doctor, if contradicted by another doctor, can only be

18

1    rejected for specific and legitimate reasons that are supported by substantial evidence in the

2    record." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603-04 (9th Cir. 1999) (citing

3    *Andrews*, 53 F.3d at 1043).  The ALJ can "meet this burden by setting out a detailed and thorough

4    summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and

5    making findings." *Thomas v. Barnhart*, 278 F.3d at 957 (quoting *Magallanes*, 881 F.2d at 751).

6    The ALJ may also use the testimony of a non-examining medical advisor to reject the opinion of a

7    treating or examining physician if other evidence also supports the ALJ's decision.  *See*

8    *Magallanes*, 881 F.2d at 751–55 (holding that the ALJ properly used a non-examining physician's

9    opinion to reject the opinion of a treating physician because there was an abundance of other

10   evidence that supported the ALJ's decision).

11        The ALJ gave three reasons for rejecting Dr. Lin's medical opinion.  AR at 34.  First, she

12   found that there was "no reasonable explanation" for Dr. Lin's "assessed restrictions to only 10

13   minutes of standing, less than two hours of standing and walking, or 4 hours a day of sitting in an

14   8-hour workday, or that the claimant would require 5 additional unscheduled breaks each day."

15   AR 34.  According to the ALJ, "[n]one of these specific limitations logically follows from the

16   stated clinical findings of "daily headaches" and "left eye limitation."  *Id*.  Second, the ALJ cites

17   the fact that Dr. Lin had "only just started the claimant on Neurontin [and] there was no

18   documentation of follow-up appointments to help determine whether this newly prescribed

19   medication helped relieve the claimant's reported headache pain, the way, for example, he had

20   reported over-the-counter advil had done on May 6, 2009."  *Id*.  Third, the ALJ rejected Dr. Lin's

21   assessment that Mr. Nguyen's headaches would "constantly" interfere with his concentration on

22   the basis that Dr. Morse reported that Plaintiff's concentration was "intact" during his August 11,

23   2009 psychological examination of Plaintiff and Dr. Padidar also reported that Plaintiff's attention

24   span and concentration was "good."  AR 373, 381.

25        As a preliminary matter, the Court must determine the applicable standard, that is, whether

26   the ALJ was required to articulate clear and convincing reasons for rejecting Dr. Linn's testimony

27   or rather, whether she was required only to articulate specific and legitimate reasons supported by

28   substantial evidence in the record.  In rejecting Dr. Linn's opinions, the ALJ cited conflicts in the

United States District Court
Northern District of California

19

record on only one limitation, namely, Dr. Linn's opinion that Plaintiff's pain would interfere with "the attention necessary to sustain simple, repetitive work tasks" "constantly" over the course of a typical 8 hour work day.  AR 34, 418.  However, neither Dr. Morse nor Dr. Padidar addressed the question on which Dr. Linn opined, which focused on Plaintiff's ability to maintain attention and concentration in a work setting.  Rather, Drs. Morse and Padidar only observed that Plaintiff's attention and concentration was good during their examinations of Plaintiff.   Thus, Dr. Linn's opinions were uncontroverted and the ALJ was required to articulate clear and convincing reasons for rejecting those opinions.   For the reasons stated below, the Court finds that the ALJ did not meet this standard.  Further, even assuming Dr. Linn's opinion was controverted by other medical opinions in the record, the Court concludes that the ALJ failed to articulate specific and legitimate reasons for rejecting those opinions.

First, the ALJ's rejection of Dr. Linn's opinions as to certain limitations on the basis that they did not "logically follow" from his left eye limitation of movement or his daily headaches is not supported by substantial evidence and does not constitute a specific and legitimate reason for rejecting  Dr. Linn's opinions about these limitations.  This statement is entirely conclusory and is not supported by any citation to evidence in the record. An ALJ must not "'substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings.'"  *Trevino v. Colvin*, 2013 WL 645455, at *2 (C.D.Cal.,Feb. 20, 2013) (quoting *Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D.Cal.2006)). To the extent the ALJ exceeded her role, she failed to provide an adequate reason for rejecting Dr. Linn's opinions as to these limitations.  *See id*.

Second, as to Dr. Linn's opinion that Plaintiff would experience good days and bad days and therefore would need to miss more than four days of work, the ALJ failed to offer *any* reason for her rejection of this opinion.  This limitation is not included in the list of limitations that the ALJ found were not logically related to Plaintiff's impairments.  Nor does she explain why she rejects Dr. Linn's opinion elsewhere in her written decision.   Furthermore, her rejection of Dr. Linn's opinion as to this limitation is not supported by substantial evidence in the record.  There is no evidence in the record that any other doctor (treating or otherwise) addressed this question.

United States District Court
Northern District of California

1    Indeed, Dr. Gable, the state consultant whose opinions the ALJ found were "most consistent" with

2    the overall medical evidence, acknowledged that Plaintiff experienced headaches and diplopia and

3    qualified his functional capacity assessment by recommending that Plaintiff's "activities be

4    curtailed as far as lifting [and] undue physical activity until [questions related to the persistence of

5    an aneurism] have been resolved."  AR 383.

6          Third, the ALJ's reliance on the possibility that the Neurontin prescribed by Dr. Linn

7    might relieve Plaintiff's headaches and on the lack of documentation  as to subsequent visits to Dr.

8    Linn after Neurontin was first prescribed is not a specific and legitimate reason for rejecting Dr.

9    Linn's opinions relating to Plaintiff's limitations.  Rather, the ALJ was merely speculating that the

10   new medication *might* relieve Plaintiff's headaches.   In the absence of affirmative evidence

11   demonstrating that Neurontin effectively treated Plaintiff's headaches, the ALJ was obligated to

12   seek additional information to support her conclusions and articulate specific reasons for making

13   this finding.  *See Brown*, 713 F.2d at 443 (holding that the ALJ has "a special duty to fully and

14   fairly develop the record and to assure that the claimant's interests are considered").  This is true

15   even though Plaintiff was represented by counsel.  *Id.* (citing *Driggins v. Harris*, 657 F.2d 187,

16   188 (8th Cir. 1981)).  "Ambiguous evidence, or the ALJ's own finding that the record is

17   inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an

18   appropriate inquiry.'" *Id.* (citing *Smolen*, 80 F.3d at 1288).  Here, the ALJ failed to fulfill this

19   duty.

20         Moreover, Mr. Nguyen's subsequent appointments with Dr. Lin show that he continued to

21   experience severe headaches even after Neurontin was prescribed.  AR at 441-447.   This evidence

22   was before the Commissioner before its decision became final and further undermines the

23   reasoning offered by the ALJ to support her rejection of Dr. Linn's opinions.

24         For the forgoing reasons, the ALJ improperly disregarded Dr. Lin's medical opinion

25   because her conclusion was not supported by substantial evidence that is found in the record.

26         **B.    *Discrediting Mr. Nguyen's Pain Testimony***

27         A claimant's credibility in a Social Security hearing is the degree to which the claimant's

28   statements can be believed and accepted as true.  SSR 96-7p at 4.  The ALJ must make credibility

United States District Court
Northern District of California

findings to determine the truth of the claimant's description of his symptoms and pain.  *See Saelee v. Charter*, 94 F.3d 520, 522 (9th Cir. 1996) (holding that the ALJ is responsible for determining credibility and resolving conflicts between medical testimony).  To determine the claimant's credibility, the ALJ must engage in a two-step analysis.  *Batson*, 359 F.3d at 1196 (citing *Smolen*, 80 F.3d at 1281).

In the first step*,* the claimant must produce objective medical evidence demonstrating an underlying impairment that could reasonably be expected to produce pain or other symptoms.  *Id.* (quoting *Smolen*, 80 F.3d at 1281-82).

If this test is satisfied, the ALJ may discredit the claimant's testimony in part or in whole by providing "specific, cogent reasons for the disbelief."  *Lester*, 81 F.3d at 834 (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).  But if there is no affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 834).  The ALJ must support these reasons with specific findings that "'convincingly justify [her] rejection' of the claimant's excess pain testimony."  *Stewart v. Sullivan,* 881 F.2d 740, 743 (9th Cir. 1989) (quoting *Bellamy v. Secretary of Health & Human Servs.*, 755 F.2d 1380, 1382 (9th Cir. 1985)); s*ee also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) ("It's not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible.").  The ALJ may not discredit the claimant's testimony regarding the severity of the symptoms merely because it is unsupported by objective medical evidence.  *Reddick*, 157 F.3d at 722; *see also Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("[I]t is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

The ALJ correctly found that Mr. Nguyen's medically determinable impairment could reasonably be expected to cause his alleged symptoms.  AR at 35.  Therefore, the ALJ properly proceeded to step two of the analysis.

As a threshold matter, the Court notes that the ALJ did not find that Mr. Nguyen is a malingerer.  The Court also finds that there is no affirmative evidence in the record suggesting that

Mr. Nguyen was malingering.  "'Malingering' is a medical term defined as the willful, deliberate, and fraudulent feigning or exaggeration of the symptoms of illness or injury."  *Morales v. Apfel*, 225 F.3d 310, 313 n.3 (3d Cir. 2000) (quoting *Dorland's Illustrated Medical Dictionary 982* (2d ed. 1994)).  Although the physicians were not in total harmony regarding the extent of Mr. Nguyen's impairments, none of them suggested that he was exaggerating the severity of his headaches.  Because no evidence of malingering exists, the ALJ was obligated to present "clear and convincing" reasons for rejecting Mr. Nguyen's testimony.  *Burch*, 400 F.3d at 680 (citing *Lester*, 81 F.3d at 834).

"In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains."  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  For example, the ALJ in *Thomas* gave "specific, clear and convincing reasons for discounting" the plaintiff's testimony because the ALJ documented numerous inconsistencies between the plaintiff's activities and her testimony.  278 F.3d at 959.  The ALJ also detailed the plaintiff's lack of candor regarding her past drug abuse, her general unwillingness to work, and her failure to cooperate during physical capacity evaluations.  *Id.* at 959-60.

In the present case, the ALJ intimated several reasons for rejecting Mr. Nguyen's testimony.  First, she noted that "only weeks after his brain surgery, the claimant reported that he was taking advil for his migraine, which relieved his symptoms."  AR at 34.  However, Mr. Nguyen never indicated that he was pain-free and the record reflects that he continued to experience pain from severe headaches despite taking Advil.  When Mr. Nguyen went to the emergency room in April of 2009, he reported a pain level of eight out of ten.  AR at 279.  Dr. Padidar noted that Mr. Nguyen "is still complaining of left sided headaches."  AR at 373.  During his first appointments with Dr. Lin in 2010, he reported a pain level of between eight and nine out of ten.  AR at 422.  The medical expert testified that when Mr. Nguyen went to the emergency room on July 4, 2010, he received treatment for pain and had a history of severe headaches and eye pain.  AR at 64.  In addition, Mr. Nguyen testified that he takes three to four Vicodin a day to

United States District Court
Northern District of California

1   manage his pain.  AR at 72.  The ALJ ignored this evidence.  Moreover, as discussed above, Mr.

2   Nguyen reported a pain level of nine out of ten and ten out of ten during his follow up

3   appointments with Dr. Lin.  AR at 441-47.  In light of all the evidence in the record, the evidence

4   cited by the ALJ in support of her conclusion, namely, that Mr. Nguyen relieved his symptoms by

5   taking Advil, is not a clear and convincing reason to reject his pain testimony.

6          Second, the ALJ pointed out that wearing an eye patch helps Mr. Nguyen with his

7   dizziness and headaches.  AR at 34.   The fact that the eye patch is of some help to Mr. Nguyen,

8   however, does not mean that his headaches are not severe.  According to his testimony, he has

9   been wearing the eye patch regularly but still experiences severe headaches.  AR at 70.  And as the

10  medical expert testified, the main purpose of the eye patch is to improve Mr. Nguyen's vision.

11  Although the medical expert noted that an eye patch usually clears up problems associated with

12  double vision, he never suggested that Mr. Nguyen does not have headaches or that the eye patch

13  would be expected to eliminate Mr. Nguyen's headaches.

14         Third, the ALJ noted that Mr. Nguyen's concentration seemed good during his

15  appointment with Dr. Padidar.  AR at 34.  But Dr. Padidar also reported that Mr. Nguyen was

16  complaining of left sided headaches.  AR at 373.  This is consistent with Plaintiff's testimony.

17  Pain and the inability to concentrate are not synonymous and the ALJ did not explain why Dr.

18  Padidar's statement regarding Mr. Nguyen's concentration casts doubt on the veracity of Mr.

19  Nguyen's pain testimony.  Even if Mr. Nguyen did not have a headache during his appointment,

20  one headache-free medical appointment in a nineteen-month period does not provide sufficient

21  grounds for rejecting his testimony.  *See Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984)

22  (holding that a claimant's failure to exhibit manifestations of pain at the hearing before the ALJ is

23  insufficient to rebut a claim of pain).  Consequently, Mr. Nguyen's seeming ability to concentrate

24  during a medical evaluation does not provide a clear and convicting reason to reject his pain

25  testimony.

26         Fourth, the ALJ noted that Mr. Nguyen's daily activities include cooking soup, taking

27  medication, and going to the park.  AR at 34.  While a claimant's daily activities may cast doubt

28  on the validity of the claimant's testimony, "[t]he Social Security Act does not require that

1    claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603

2    (9th Cir. 1989), *see also Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004).  Many activities

3    are not "easily transferable to what may be the more grueling environment of the workplace,

4    where it might be impossible to periodically rest or take medication." *Id.*  Mr. Nguyen testified

5    that he required frequent breaks while he walks around the park.  AR at 76.  Additionally, his

6    ability to cook chicken soup does not necessarily render him able-bodied.  *See Gallant,* 753 F.2d

7    at 1453 (ordering award of benefits for pain despite claimant's ability to cook meals and wash

8    dishes).  Here, the ALJ failed to explain why Mr. Nguyen's daily activities cast doubt on his

9    credibility with respect to his pain testimony.

10          Fifth, the ALJ noted that the CT scans of Mr. Nguyen's head and MRI's did not reveal any

11   acute intracranial findings or residual aneurisms.  AR at 35.  However, it is well established that so

12   long as there is any underlying impairment that is expected to produce pain, the severity of the

13   claimant's symptoms may not be discredited merely because it is unsupported by objective

14   medical evidence.  *See Reddick*, 157 F.3d at 722.  Standing alone, this is not a clear and

15   convincing reason to rejecting Mr. Nguyen's pain testimony.

16          Sixth, the ALJ noted that Mr. Nguyen was laid off in 2007, but "continued to look for

17   work, if unsuccessfully, during the relevant period under adjudication."  AR at 35.  It is not clear

18   whether the ALJ relied on this when determining Mr. Nguyen's credibility, but to the extent that

19   she may have, the Court will address it.  Mr. Nguyen did not testify that he applied for

20   unemployment and continued to look for work after he allegedly became disabled.  AR at 60.  He

21   merely stated that he applied for unemployment after he was laid off in November 2007, well

22   before his alleged disability began.  AR at 60, 168.  Even if Mr. Nguyen continued to look for

23   work and filed for unemployment after his alleged disability, the ALJ did not make specific

24   findings based on the record or explain why this is relevant to his credibility.

25          Finally, the ALJ pointed out that Mr. Nguyen completed his own Third Party Function

26   Report rather than having it filled in by a third party.  AR at 35.  The ALJ found that it would have

27   been helpful if a third party had corroborated Mr. Nguyen's subjective complaints and alleged

28   day-to-day limitations.  *Id.*  The Court agrees with the ALJ on this point.  However, the ALJ did

United States District Court
Northern District of California

not find that the report was inconsistent with his testimony.  If the ALJ found that she did not have sufficient information to reach a decision, then she was obligated to conduct an appropriate inquiry and supplement the record.  *See Brown*, 713 F.2d at 443.  The ALJ made no such injury.

For the reasons stated above, the ALJ improperly disregarded Mr. Nguyen's testimony because she did not provide clear and convincing reasons for doing so.

### C.      Vocational Expert Hypothetical at Step Five

Mr. Nguyen argues that the hypothetical posed by the ALJ to the VE was inadequate because it excluded some of his functional limitations.     The Court agrees.

"[I]n hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence."  *Robbins*, 466 F.3d at 886 (citing *Osenbrock v. Apfel,* 240 F.3d 1157, 1163-65 (9th Cir. 2001)).  "Conversely, an ALJ is not free to disregard properly supported limitations."  *Id.*  Here, the ALJ's hypothetical was incomplete because she improperly rejected Dr. Lin's medical opinion and Mr. Nguyen's pain testimony.  "Because those determinations were flawed, the hypothetical posed to the vocational expert was legally inadequate."  *Id.*  This error is not a harmless because a proper hypothetical would have included limitations that would have been determinative as to the vocational expert's recommendation to the ALJ.  *Id.*  Consequently, the ALJ's Step Five determination is not supported by substantial evidence.

### D.      Appropriate Remedy

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court.  *Reddick*, 157 F.3d at 728 (citing *Swenson v. Sullivan,* 876 F.2d 683, 689 (9th Cir.1989)).  The Court has "credited evidence and remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited."  *Smolen*, 80 F.3d at 1292 (internal citations omitted).

Because the ALJ improperly rejected the opinion of Dr. Lin and did not provide legally

26

1    sufficient reasons for discrediting Mr. Nguyen's testimony, the Court credits as true Dr. Lin's

2    opinion that Mr. Nguyen (1) would experience good and bad days and likely need to miss more

3    than four days of work per month and (2) can stand or walk for less than two hours in an eight-

4    hour workday.

5         As to the first opinion, the VE did not specifically address how this limitation would affect

6    Mr. Nguyen's ability to work.  However, the Court may nonetheless consider it when determining

7    the appropriate remedy.  *See Benecke*, 379 F.3d at 595.  In *Benecke*, the Ninth Circuit explained

8    that "in the unusual case in which it is clear from the record that the claimant is unable to perform

9    gainful employment in the national economy, even though the vocational expert did not address

10   the precise work limitations established by the improperly discredited testimony, remand for an

11   immediate award of benefits is appropriate."  *Id.*  This is such a case.

12        Courts have widely held that where a claimant is likely to miss multiple days of work per

13   month due to an impairment or combination of impairments, the claimant cannot work.  *See, e.g.*,

14   *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1164-65 (9th Cir. 2012) (holding that

15   remand for benefits was required because the claimant would likely miss multiple days of work

16   per month and was therefore disabled); *Schulz v. Astrue*, 849 F. Supp. 2d 1049, 1055 (W.D. Wash.

17   2011) (remanding for award of benefits because crediting a doctor's testimony established that the

18   claimant would miss work five times a month due to migraine headaches and was therefore

19   disabled); *Cash v. Astrue*, EDCV 09-1150 CW, 2010 WL 2888973 (C.D. Cal. July 20, 2010)

20   (remanding for award of benefits because a doctor's assessment that the claimant would be absent

21   from work three or more days per month indicated that the claimant must be disabled, even though

22   the VE did not testify about that specific limitation); *Dennis v. Astrue*, 655 F. Supp. 2d 746, 753

23   (W.D. Ky. 2009) (finding that claimant was disabled based on VE testimony that "employers

24   typically will tolerate no more than two absences per month on a consistent basis").  Thus,

25   crediting Dr. Lin's opinion that Mr. Nguyen would likely need to miss more than four days of

26   work per month, the Court finds that Mr. Nguyen is unable to work.  *See Benecke*, 379 F.3d at

27   595.

28        The Court further concludes that award of benefits is appropriate in light of Dr. Lin's

United States District Court
Northern District of California

27

1    opinion that Mr. Nguyen can stand or walk for less than two hours in an eight-hour workday.  AR

2    at 419.  The VE testified that someone with Mr. Nguyen's limitations, who also cannot stand or

3    walk for more than four hours in an eight-hour work, could not perform any job.  AR at 87.

4    Therefore, crediting Dr. Lin's opinion, Mr. Nguyen is unable to perform work of any kind on this

5    basis as well.  AR at 87, 419.  Consequently, the Court finds that remanding for award of benefits

6    is appropriate under the circumstances of this case.

7    **IV.      CONCLUSION**

8              For the forgoing reasons, Plaintiff's Motion for Summary Judgment is GRANTED.  The

9    Commissioner's Motion for Summary Judgment is DENIED.  The decision of the Commissioner

10   is REVERSED and REMANDED for award of benefits.

11             **IT IS SO ORDERED**.

12   Dated:  August 13, 2013

13

14

15   _____

16   JOSEPH C. SPERO
     United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28